**NOURSE & BOWLES, LLP**
**Attorneys for Petitioner**
**FIRST AMERICAN BULK CARRIER CORPORATION**
**One Exchange Plaza**
**At 55 Broadway**
**New York, NY 10006-3030**
**(212) 952-6200**


**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------X
**FIRST AMERICAN BULK CARRIER**      :
**CORPORATION,**                      :
                                      :
                    Petitioner,       :    07 CV 11194
                                      :
        - against -                   :
                                      :
**VAN OMMEREN SHIPPING (USA)**        :
**LLC and STRONG VESSEL**             :
**OPERATORS LLC,**                    :
                                      :
                    Respondents.      :
-------------------------------------------------------X

## MEMORANDUM IN SUPPORT OF PETITION
## TO COMPEL ARBITRATION AGAINST STRONG


Armand M. Paré, Jr., Esq.
Nourse & Bowles, LLP
Attorneys for Plaintiff
One Exchange Plaza
New York, NY 10006
(212) 952-6200

NOURSE & BOWLES, LLP
Attorneys for Petitioner
FIRST AMERICAN BULK CARRIER CORPORATION
One Exchange Plaza
At 55 Broadway
New York, NY 10006-3030
(212) 952-6200


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X
FIRST AMERICAN BULK CARRIER        :
CORPORATION,                       :
                                   :
                    Petitioner,    :    07 Civ.    (    )
                                   :
        - against -                :
                                   :
VAN OMMEREN SHIPPING (USA) LLC and :
STRONG VESSEL OPERATORS LLC,       :
                                   :
                    Respondents.   :
                                   :
-----------------------------------------------------X

## MEMORANDUM IN SUPPORT OF PETITION
## TO COMPEL ARBITRATION AGAINST STRONG

### Introduction

Petitioner, First American Bulk Carrier Corp. ("Petitioner" or "FABC")

seeks an order pursuant to the United States Arbitration Act, 9 U.S. Code § 1 et seq.

and, in particular, § 4 thereof, ordering that respondent, Strong Vessel Operators

LLC ("Strong"), as the de facto successor in interest and alter ego of respondent,

Van Ommeren Shipping (USA) LLC (sometimes referred to as "Van Ommeren")

be ordered to arbitrate with Petitioner.

## Summary of Facts

The underlying facts are that Petitioner, as disponent owner, chartered the

M/V CHESAPEAKE BAY (the "Vessel") to Van Ommeren Shipping (USA) LLC

but a charter party dated February 3, 1999.  Van Ommeren Shipping (USA) LLC, in

turn, subchartered the vessel to the Military Sealift Command which required that

the Vessel be equipped with a certain crane.  In furtherance of that subcharter, a

crane was placed on board the Vessel but on condition that Van Ommeren Shipping

(USA) LLC accept full responsibility for, among other things, the crane, its

operator, operations and associated equipment.  In addition, Van Ommeren

Shipping (USA) LLC provided the plan, instructions, lashing and securing

equipment to secure the crane to the Vessel.  Thereafter, two of the vessel officers

were seriously injured in separate incidents involving the crane under circumstances

in which Van Ommeren Shipping (USA) LLC and the crane owner should have

liability.  These officers, however, sued Petitioner (and others including Van

Ommeren Shipping (USA) LLC) and Petitioner paid substantial sums in

compromise of those injury claims without prejudice to seeking indemnity and

contributions.  In addition, Petitioner was forced to defend an action commenced by

the crane owner for damages alleged to the crane, resulting in Petitioner being

forced to settle that action in circumstances in which Van Ommeren Shipping

(USA) LLC had liability to pay said settlement amounts.  It is indemnity for these

sums which Petitioner has paid, together with the legal costs of defense expended

by Petitioner, that is the subject of an arbitration under the charter party between Petitioner and Van Ommeren Shipping (USA) LLC.

Party-appointed arbitrators have been named by Petitioner and Van Ommeren Shipping (USA) LLC and their respective counsel have met to discuss the case and settlement.

In the interim, Petitioner has learned that Van Ommeren Shipping (USA) LLC has ceased functioning under that corporate name because its license to operate under that name from the parent "Van Ommeren" company in Holland has expired and the business of Van Ommeren Shipping (USA) LLC is now operating under the name of Strong Vessel Operators LLC. In fact, Strong operates out of the same offices in Connecticut as had Van Ommeren Shipping (USA) LLC and uses the former Van Ommeren (USA) LLC website "www.voshipping.com." That website now states as follows:

> Strong Vessel Operators ("SVO") operated for over 50 years in the USA under the name of Van Ommeren Shipping ("VOS"). Initially VOS acted as agents for foreign dry bulk, tanker, liner, heavylift and marine salvage companies. In the late 70's, VOS started to book cargoes and ships for its own account. This was followed by the acquisition in 1984 of the US flag heavy lift vessel "Strong Texan" as part of a consolidation between Dock Express Contractors and VOS.
>
> VOS used to be part of The Van Ommeren Group, a Netherlands based multi-national company involved in tank storage and ocean shipping. Van Ommeren decided to concentrate on tank storage and spun off most of its non-core activities. VOS was spun off in 1997 to U.S. citizen interests. In 1999 the Van

> Ommeren Group and Pakhoed merged to form Vopak.
> VOS' license agreement to trade under the Van
> Ommeren name and logo expired at the end of 2003 at
> which time the company's name was changed to Strong
> Vessel Operators LLC.
>
> The name is derived from the prefix STRONG of its
> U.S.-flag vessels such as that of its first U.S. flag vessel
> "Strong Texan".
>
> SVO continues VOS' activities unchanged.  The
> company is active as ship owner and ship charterer, with
> emphasis on U.S.-flag.  VOS is a partner in a $100.0
> million venture with automobile logistics company The
> Pasha Group to own and operate a 4,300 capacity PCTC
> (Pure Car Truck Carrier), presently under construction
> in a U.S. shipyard for delivery end 2004.  SVO is
> interested to expand its U.S.-flag operations and is
> continually evaluating new projects.
>
> (emphasis added)

It therefore appears that Van Ommeren Shipping (USA) LLC has ceased

functioning under that name, by reason of having lost its license to use the "Van

Ommeren" name and "SVO continues VOS activities unchanged."  In the

circumstances, Petitioner seeks an order that Strong be ordered to arbitrate with

Petitioner under the charter in question in addition to Van Ommeren Shipping

(USA) LLC.  Petitioner has made a demand on Strong to arbitrate but, to date,

Strong has not responded.  In view of a possible statute of limitations problem,

Petitioner now seeks an order compelling Strong to arbitrate in accordance with

9 U.S. Code § 4 which authorizes this relief when a party is "aggrieved by the

alleged failure, neglect or refusal of another to arbitrate."

## POINT I

### THE ARBITRATION AGREEMENT IS ENFORCEABLE AGAINST STRONG AS THE DE FACTO SUCCESSOR IN INTEREST TO AND ALTER EGO OF VAN OMMEREN

Public records and documents setting forth the corporate status and structure of Van Ommeren and Strong indicate that the change of corporate identity from Van Ommeren to Strong is nothing more than a "name change" and continuation of Van Ommeren's business under Strong's name. In these circumstances, it is appropriate to amend the complaint to assert Plaintiff's arbitrable claims directly against Strong, the party that has assumed Van Ommeren's corporate identity and the only party which (apparently) has any ongoing business operations and, presumably, assets. As discussed below, Strong's succession to Van Ommeren's business operations makes it responsible for the obligations and debts assumed by Van Ommeren prior to the time that entity was declared "inactive" and ceased business operations, including the obligation to arbitrate the current dispute with Petitioner.

It is well settled under New York and federal law that a party can be compelled to arbitrate a dispute even when that party is not named in the arbitration agreement when the unnamed party is a successor in interest to the contracting party. Matter of AT&S Transportation, 22 A.D.3d 750, 803 N.Y.S.2d 118 (2d Dept. 2005); Lippus v. Dahlgren Mfg. Co., 644 F. Supp. 1473, 1482 (E.D.N.Y. 1986); Ibar Ltd. v. ABS, Slip Op. 97 Civ. 8592 (S.D.N.Y. May 22, 1998), 1998 U.S. Dist. LEXIS 7792 (finding non-signatory could compel arbitration where non-

signatory was successor in interest to party that signed arbitration agreement.)  See

also, Smullyan v. Sibjet S.A., 201 A.D.2d 335, 607 N.Y.S.2d 316 (1st Dept. 1994)

("successors in interest and mere alter egos" compelled to arbitrate even though

parties were not signatories to the agreement).

New York law, which defines when one corporation becomes a successor in

interest to another, recognizes four circumstances where a successor corporation

may be held responsible for its predecessor's debts or agreements, including an

agreement to arbitrate:  (1) where the successor expressly or impliedly assumed the

predecessor's liability; (2) where there has been a consolidation or merger of seller

and purchaser; (3) when there has been a de facto merger by the successor

corporation continuing the business of the predecessor entity; and (4) where a

transaction between the two was entered into fraudulently to escape such

obligations.  See, Schumacher v. Richards Shear Co., Inc., 59 N.Y.2d 239, 245, 464

N.Y.S.2d 437, 440 (1983); Matter of AT&S, supra 803 N.Y.S.2d at 120-121.

In defining whether a de facto merger or "mere continuation" of business has

occurred, the courts have outlined certain factors which apply including:

continuity of ownership, assumption by the successor of liabilities ordinarily liable

for the uninterrupted continuation of the business by the acquired corporation and

the continuity of management, personnel, physical location, assets and general

business operations. See, Cargo Partner A.G. v. Albatrans, Inc., 207 F. Supp.2d 86

(S.D.N.Y. 2002) aff'd, 352 F.3d 41 (2d. Cir. 2003), Matter of AT&S, supra.

Neither the state or federal courts hew to a mechanistic test to determine when one

corporation is the successor of another.  Instead, the courts look to the facts of each

particular transfer and attempt to answer the critical question of whether "it was the

intent of [the successor] to absorb and continue the operation of [the predecessor]"

Miller v. Forge Mench Partnership Ltd., Slip Op. 00 Civ. 4314 (S.D.N.Y. Jan. 31,

2005), 2005 U.S. Dist. LEXIS 1524 *6, citing, Nettis v. Leavitt, 241 F.3d 186, 194

(2d Cir. 2001) thereby making the successor responsible for the predecessor's

obligations.  A relevant example of the analysis is found in Matter of AT&S

Transportation.

       In that decision, the court specifically found that a successor corporation was

bound by a mandatory arbitration clause contained in an agreement entered into by

the predecessor corporate entity.  The court determined that the successor

corporation assumed the obligation to arbitrate as a result of a de facto merger with

the predecessor entity.  In finding that a de facto merger had taken place between

the two entities, the court was persuaded by the following facts:

> In consideration for the transfer of shares …
> substantially all the assets of [the predecessor entity]
> were purchased or licensed by [the successor].  The real
> property of the predecessor corporation was transferred
> or assumed by [the successor].  [The successor] offered
> employment to its predecessor's employees, hired two
> of its predecessor's management personnel, assumed the
> contracts of independent contractors, agreed to honor
> the predecessor's customer service contracts, and
> received the predecessor's business insurance policy.
> Moreover, pursuant to the transfer agreement, [the
> predecessor] could no longer use it trade name  ….

Matter of AT&S Transportation, 22 A.D.3d at 753.

The <u>Miller</u>, <u>supra</u>, decision is also instructive. In that action, Plaintiff Nolan Miller sought to enforce a judgment against Morgan Miller, a corporate successor in interest to the judgment debtor, Forge Mench. Documents produced in that case indicated that the corporate change from Forge Mench to Morgan Miller was intended to leave Forge Mench's business operations essentially intact, including the assumption of contractual agreements, outstanding purchase orders, accounts receivable and the continued conduct of Morgan Miller's business operations, under a new name held by Forge Mench. Evidence was produced which also indicated a conscious effort on the part of Morgan Miller, the successor corporation, to downplay the change to Forge Mench with its business partners and others by keeping part of the Morgan Miller name, and informing contractors that the new entity was operating the former Morgan Miller. The court found that the corporate change was a "de facto merger" and continuation of one entity's operations under another entity's name and, therefore, held the successor company responsible as the judgment debtor. <u>Miller</u>, 2005 U.S. Dist. LEXIS 1524.

In conducting its analysis, the District Court examined four factors significant to the determination of whether a corporate change was a "defacto merger" sufficient for the imposition of liability on the successor: (1) continuity of ownership; (2) cessation of ordinary business operations by the predecessor; (3) assumption by the successor of liabilities ordinarily necessary for continuation of the predecessor's business; and (4) continuity of management, personnel, physical location, assets, and general business operations. See <u>Miller</u>, <u>supra</u> at *9, citing

8

Nettis v. Levitt, 241 F.3d at 193-94.  In finding that a de facto merger had taken place, the district court relied heavily on the Second Circuit's analysis in Cargo Partner and reiterated that:

> The de facto merger doctrine is to "avoid [the] patent injustice which might befall a party simply because a merger has been called something else," *Cargo Partner* 352 F.3d at 46 (citations omitted), such "injustice" is not a separate, free-standing criterion in the de facto merger analysis. Rather, it is the end result of allowing a successor company that effectively differs from its predecessor in name only to escape the predecessor's outstanding debts and liabilities.

Miller, 2005 U.S. Dist. LEXIS 1524 *9.

The instant case appears to fall squarely within the factual parameters articulated by the state and federal courts for imposing a duty to arbitrate upon a non-signatory successor in interest.  Public records and Strong's own marketing materials give every indication that Strong simply absorbed Van Ommeren and continued its operations, unchanged, under a new name, with the same ownership, employees, address, contracts and operations.  See, Cargo Partner, supra, citing Fitzgerald v. Fahnstock & Co., 286 A.D.2d 573, 730 N.Y.S.2d 70 (1st Dept. 2001). For example, records on file with the Connecticut Secretary of State confirm the apparent merger of both Van Ommeren (USA) and Strong.[1]

Further, on its web site, Strong holds itself out as a mere continuation of Van Ommeren's business operations, and Strong utilizes Van Ommeren's former office

---

[1]  At least for some time, Nickel van Reesema  has been identified as the president, chief executive officer and principal owner of  both Van Ommeren and Strong.

space, web and email addresses, telephone number and employees. In fact, the

email address and URL for Strong's web site continue to use the prefix "VO" or

"VO USA". Strong also publishes this information on the web and in shipping

reference tools such as the Lloyds Register of Ships. Significantly, there is

currently no "active" listing for Van Ommeren as a corporation after its license to

use the Van Ommeren name expired. Based on these facts, there is ample evidence

that Strong has wholly assumed Van Ommeren's corporate identity, assets and

operations and, therefore, has also assumed Van Ommeren's obligation to arbitrate.

## POINT II

### PETITIONER IS PRESENTLY ENTITLED TO AN
### ORDER THAT STRONG BE DIRECTED TO ARBITRATE

The case of <u>In the Matter of Arbitration between Hydrocarburos y Derivados</u>

<u>C.A. and Lemos</u>, 453 F. Supp. 160 (S.D.N.Y. 1978) addressed when parties having

a relationship to those named in a charter party contract should be directed to

arbitrate. The contract of affreightment in that case was between Nererus Shipping

"as agents for owners" and Hidecea, as charterer. More specifically, issues arose as

to what individual shipowners should be bound to arbitrate under the open-ended

contract of affreightment in that case and whether, in one situation, the court should

"disregard the corporation in which legal title to the vessel reposed", 453 F. Supp.

at 172, and order Mr. Costas M. Lemos to arbitrate personally. In discussing

whether this should be done *prior* to commencement of the hearings, Judge Haight,

writing for this court said:

> The statute quite clearly mandates resolution of such
> questions *prior to the arbitration hearing and award.*
> Indeed, it has been held that a party which fails to raise
> such questions in advance of arbitration pursuant to § 4
> of the Arbitration Act cannot raise them subsequently
> on a motion to confirm the award pursuant to § 9.
>                               (emphasis added)
>                               453 F. Supp. at 174

In a further supplemental memorandum and order Judge Haight added:

> I read <u>Orion</u> and <u>Fisser v. International Bank</u>, 282 F.2d
> 231 (2d Cir. 1960), cited in <u>Orion</u>, to require that the
> alter ego theory, and any other theory determinative of
> the identity of the parties to an arbitration agreement, be
> tested by an action to compel arbitration under § 4, *prior
> to the arbitration hearings.*
>
>                               (emphasis added)
>                               453 F. Supp. at 177

In <u>Orion Shipping & Trading Co. v. Eastern State Petroleum Corp.</u>, 312 F.2d

299 (2d Cir. 1963) the Court of Appeals for the Second Circuit held that "an action

for confirmation is not the proper time for a District Court to 'pierce the corporate

veil'." It added: "Our conclusion does not in any way impugn the soundness of the

reasoning in the <u>Fisser</u> case, which arose in the quite distinguishable context of an

action to *compel* arbitration under 9 U.S.C. § 4 rather than to confirm." 312 F.2d at

301.

In <u>Fisser v. International Bank</u>, 282 F.2d 231 (2d Cir. 1960) (a case in which,

by coincidence, "van Ommeren Shipping (USA) Inc." were the brokers), an issue

arose as to whether International Bank, which was alleged to be the alter ego of the

11

charterer, a Liberian company, Allied, which was assetless (see 282 F.2d at 236),

could be directed to arbitrate. The court found that it could, saying:

> Libelants argue that if in fact Allied was the
> respondent's mere *alter ego*, making this a proper case
> to pierce the corporate veil of Allied and to hold those
> controlling it as one with it, then *consistency and the
> alter ego doctrine itself require that the respondent be
> obligated not only to respond in damages for Allied's
> breach of contract but to specifically perform Allied's
> other contractual obligations, including that of
> arbitration.*

> We agree. While we discover no authority on
> this precise point, it is clear that the consequence of
> applying the *alter ego* doctrine is that the corporation
> and those who have controlled it without regard to its
> separate entity are treated as but one entity, and at least
> in the area of contracts, the acts of one are the acts of
> all. <u>Weisser v. Mursam Shoe Corporation</u>, supra;
> <u>Shamrock Oil and Gas Co. v. Ethridge</u>, D.C. Colo., 159
> F. Supp. 693; <u>Chilean Nitrate Sales Corp. v. The
> Nortuna</u>, supra; <u>Powell</u>, Parent and Subsidiary
> Corporations, Chpt. I. *There is no reasonable basis for
> distinguishing between the parent's obligation to
> respond in damages for its instrumentality's breach of
> contract and its obligation to arbitrate the measure of
> those damages.*

> \*　　　\*　　　\*

> We hold now that if the parent is bound to the contract
> then like its marionette it is bound to submit to
> arbitration.

> (emphasis added)
> 282 F.2d at 234-5

Clearly, <u>Fisser</u> permits a party to pierce the corporate veil at the outset of an

arbitration so that it need not arbitrate with an assetless empty shell. Further,

Hydrocarburos indicates that a party *must* raise alter ego and similar issues at the outset and seek an order compelling arbitration with the alter ego or similarly situated party, such as Strong.  In these circumstances, it is respectfully submitted that an order should be issued compelling Strong to arbitrate as there appears to be no question that it is the de facto alter ego and/or successor of Van Ommeren Shipping (USA) LLC, as Strong's own website boasts.

Petitioner therefore requests, pursuant to 9 U.S. Code § 4, that Strong be directed to arbitrate with Petitioner under the charter in question together with Van Ommeren Shipping (USA) LLC.

### Conclusion

It is respectfully submitted that Petitioner is entitled to an order, pursuant to 9 U.S. Code § 4 directing that Strong arbitrate with Petitioner under the charter in question.

Dated:  New York, New York
        December 12, 2007

Respectfully submitted,

NOURSE & BOWLES, LLP
Attorneys for FIRST AMERICAN
BULK CARRIERS CORPORATION

By:_____
    Julia M. Moore (JMM-9778)
    One Exchange Plaza
    At 55 Broadway
    New York, NY  10006-3030
    (212) 952-6200